IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHNNY L. PROCTOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, COMMISSIONER )<br>OF SOCIAL SECURITY )<br>)<br>Defendant. )<br>) | Civil Action No. 3:11-2139-TLW-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

. **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on August 27, 2007, alleging disability as of December 3, 2006. Tr. 158, 163. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on February 17, 2010, at which Plaintiff appeared and testified. On March 8, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-eight years old at the time of the ALJ's decision. He has an eighth grade education and past relevant work as an automobile body painter/helper. Tr. 21, 41- 42, 178, 211.

Plaintiff alleges disability due to residuals of left shoulder fracture, osteoarthritis of his spine; skin lesions, organic mental disorder, and an affective disorder. Tr. 11, 177, 210.

The ALJ found (Tr. 11-23):

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since December 3, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: residuals of left shoulder fracture; osteoarthritis of the spine; skin lesions; organic mental disorder; affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work, as defined in the regulations, with restrictions that require simple, routine work; only occasional pushing and/or pulling with the left non-dominant arm; no climbing or crawling; no reaching overhead with the left non-dominant arm; and indoor work in a temperature-controlled environment.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 10, 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not

> the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The Appeals Council denied the request for review on June 10, 2011. Tr. 1-5. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on August 12, 2011.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff was involved in a motorcycle accident on June 27, 2004. Hospital notes indicate that there was a questionable loss of consciousness and he was admitted with complaints of left shoulder pain. X-rays revealed a left scapular fracture and fractures of ribs with a lung parenchyma on the left.

3

Tr. 361-365. A CT of Plaintiff's shoulder showed a severely comminuted fracture of his left scapula. Plaintiff was discharged from the hospital on July 5, 2004. Tr. 406. A CT of his thoracic spine demonstrated rib fractures. Tr. 409.

On July 8, 2004, Plaintiff was seen for scapular and rib pain. He was told to continue to wear the sling and he was instructed on range of motion exercises for his hand, wrist, elbow, and shoulder Tr. 475. On July 15, 2004, it was noted that Plaintiff had decreased range of motion in his left shoulder. He reported that he was doing the exercises for his shoulder. The physician noted that Plaintiff was not ready to go back to work. Plaintiff was referred to the Orthopedic Surgery Service on July 15, 2004. Tr. 473. He returned there on August 5, 2004. Plaintiff had eighty degrees of abduction at the shoulder and ninety degrees of forward flexion. He had moderate pain with extremes of range of motion. Tr. 469. X-rays revealed fractures to the scapula and ribs. The body and inferior portion of the scapula were displaced anteriorly. Tr. 471.

Plaintiff was examined by Dr. Dell Sweatt on October 4, 2005. Plaintiff reported he could not raise his left arm all the way or put it behind his back, and was having difficulty completing duties associated with his job at an auto-body shop. Plaintiff further stated that he could not buff cars or lift more than fifty pounds with his left hand, and had limitations in painting or moving materials associated with his job. Dr. Sweatt noted that Plaintiff had skin cancer in the past, but it was treated with surgery. Plaintiff also reported a history of migraine headaches. Dr. Sweatt noted that Plaintiff was pleasant, with normal mood, and appeared to have average communication skills. Tr. 479-481.

Examination revealed that Plaintiff had full range of motion and strength on the right with some impaired strength and range of motion on the left. He had full grip strength in both hands.

Plaintiff had full range of motion in his spine, hips, and knees, and straight leg raise testing was negative. Plaintiff had normal sensation, and he was able to walk, stand on one leg, and heel or toe walk normally. Dr. Sweatt found that Plaintiff had decreased range of motion in his left shoulder, "very slightly decreased" strength, and was unable to lift more than fifty pounds with his left arm. Dr. Sweatt noted that Plaintiff was unable to do work that required full range of motion of the shoulder, "especially reaching overhead or reaching backwards." Dr. Sweatt found no evidence of low back pain or decrease in range of motion. Id.

Plaintiff was examined by Dr. Mae Jean Englee on October 17, 2007. He told Dr. Englee that he could not lift more than thirty pounds with his left arm and took Tylenol for pain which helped a little. On examination, Dr. Englee found limited range of motion in Plaintiff's left shoulder, but full range of motion, full strength, and otherwise normal findings concerning Plaintiff's back. It was noted that Plaintiff had normal memory, appropriate judgment, and appropriate mood and affect. Tr. 498-502.

Dr. John Bradley performed a psychological evaluation on December 6, 2007. Dr. Bradley noted that Plaintiff had appropriate mood, affect, and motor behavior, and was oriented to his surroundings, cooperative, and alert. Plaintiff denied any serious psychological difficulties, but had some depression due to financial difficulties and alleged an inability to work, as well as problems sleeping due to shoulder pain. Dr. Bradley diagnosed Plaintiff with depressive disorder. He opined that Plaintiff's memory was below average, Plaintiff could avoid simple dangers and understand simple directions, and Plaintiff had the mental and mathematical ability to manage his finances. Tr. 515-517.

5

Dr. Samuel Goots, a State agency psychologist, completed a Psychiatric Review Technique form on December 13, 2007. He opined that Plaintiff did not have a severe mental impairment because his affective disorder and substance abuse disorder resulted in no more than "mild" degrees of limitations. Tr. 520-532.

Plaintiff sought treatment from Dr. William Phillips in October 2008. See Tr. 536. An x-ray was taken of Plaintiff's lower back which showed some osteophytes and slight disc space narrowing at L4-5, with otherwise normal findings. Tr. 540. In November 2008, it was noted that Plaintiff was not compliant with his at-home physical therapy exercises and he reported that Darvocet was not helping his pain. Continuous home physical therapy was recommended. Tr. 547. A January 2009 MRI revealed small disc protrusions at L3-4 and L4-5 and other degenerative changes. Tr. 558.

On January 9, 2009, Plaintiff saw Dr. Norman Chutkan. It was noted that treatments had not relieved his pain. He complained of pain during flexion and extension of the lower back. Tr. 559. In February 2009, Plaintiff was seen by Dr. John Martell for complaints of shoulder pain. Tr. 562-563. A subsequent MRI showed a bony formation (osteophyte) causing an indentation of the supraspinatus muscle and tendon. Tr. 565.

Dr. Bradley performed a second psychological examination on November 5, 2009. He noted that Plaintiff was motivated, reasonably persistent, and followed simple directions, but had difficulty with some of the psychological testing. Testing revealed a full scale IQ of 57; verbal comprehension of 63; performance reasoning of 69; working memory of 55; and processing speed of 62. Dr. Bradley diagnosed Plaintiff with major depressive disorder with mild mental retardation. Tr. 577-581. Dr. Bradley completed a mental capacity form in which he opined that Plaintiff's mental impairments resulted in "poor" ability to maintain attention for two-hour segments, maintain regular

attendance and be punctual within customary tolerances, work in coordination with others, make simple work-related decisions, deal with the stress of work, interact appropriately with the public, and maintain socially appropriate behavior. Tr. 583-586.

Dr. Bradley also completed a Psychiatric Review Technique form on November 5, 2009. He opined that Plaintiff met the Listings of Impairments[1] ("Listings") at § 12.04 based on Plaintiff having depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. He also opined that Plaintiff met the Listing at § 12.05 because he had mental retardation supported by significantly sub-average general intellectual functioning, including a valid IQ score of 59 or less, marked restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Tr. 588-600.

Plaintiff was seen again in January 2010 to establish a primary care provider and for follow up of general medical care. Tr. 637-638. It was noted that no surgical intervention was planned, and that Plaintiff took Excedrin as needed for migraine headaches. Tr. 638. No neurological abnormalities were observed. Tr. 637-639.

## **HEARING TESTIMONY**

Plaintiff testified at the February 2010 hearing before the ALJ. He stated he lived with his common law wife and two minor children. Tr. 34-35. Plaintiff testified that he left school after finishing the eighth grade, and began working in a cotton mill. Tr. 38-39. He also stated he was not accepted by the military because of a past injury to his right ankle. Tr. 40. Plaintiff testified that he

---

[1]20 C.F.R. Pt. 404, Subpt. P., App. 1.

7

had a driver's license, and was able to read and write some (admitting that he could read instructions for using paint at an auto-body shop). Tr. 39, 41. At the hearing, Plaintiff's attorney stated that Plaintiff's IQ was 83 in 1972 when Plaintiff was in the eighth grade. Tr. 50.

Plaintiff testified that he had a left shoulder injury from a motorcycle accident. He stated that he could not lift his arm over his head since the accident. Plaintiff admitted that he continued working for a period of time after a motorcycle accident. Tr. 36-37. Plaintiff testified that it was necessary in his job to lift his arm above his head, but that he used his right arm to do that. Tr. 36-37. The ALJ questioned Plaintiff about the motorcycle accident, and Plaintiff stated he believed the accident affected his mental faculties in that his eyes had gotten worse. Tr. 50-51. He further testified that his breathing problems started when his lung collapsed during the accident, but thought that the years of breathing the paint and dust in the auto paint shop contributed to his breathing difficulties. He also stated he had problems breathing when he moved around too much. Tr. 57-58. Plaintiff testified that he hurt his back about one month prior to the motorcycle accident when he was working on his truck. Tr. 37. Plaintiff estimated he could sit for about fifteen to twenty minutes without having to get up and move around or lie down, and he could not walk around the block because his back hurt. Tr. 55-56. He stated that he had to lie on the floor once a day for about thirty minutes and put a pillow under his back and arch his back to get relief from the pain. He reported that medications helped some. Tr. 57. Plaintiff also testified that he had cancerous skin lesions removed and was told he had to avoid the sun. Tr. 37-38.

Plaintiff was questioned about the end of his employment in 2006, and he stated that there was not enough business to sustain his own auto-body business. Plaintiff also claimed that back and

8

shoulder pain caused him to leave work. Tr. 45. Plaintiff testified that his girlfriend helped him with the paperwork when he owned his own business. Tr. 47.

Plaintiff stated that since he had stopped working he mostly sat at home. He testified that he did not do yard work, but did do some light cooking and cleaned the dishes. Tr. 47-48.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ erred by not providing a specific explanation for rejecting a finding that he met the Listings at § 12.05C; (2) the ALJ's determination that he could perform medium work is not supported by substantial evidence and the ALJ failed to adequately address his RFC; and (3) the ALJ erred in assessing Dr. Bradley's opinion. The Commissioner contends that the final decision that Plaintiff was not disabled is supported by substantial evidence[2] and free of legal error.

A. Listings

Plaintiff alleges that the evidence submitted indicated he met the Listings at § 12.05C and the ALJ erred in failing to provide a specific explanation for rejecting a finding that he met § 12.05C. Specifically, he claims that he has valid IQ scores in the required range, has other impairments which significantly impact his ability to work, and has presented evidence of adaptive functioning during the developmental period. The Commissioner contends that the ALJ properly

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

considered the Listings at § 12.02[3] for organic mental disorders (rather than § 12.05C) based on information that Plaintiff's IQ was 83 when he was in the eighth grade and Plaintiff's testimony that he believed his past motorcycle accident affected his mental faculties. The Commissioner also argues that Plaintiff fails to show the required deficits of adaptive functioning to meet § 12.05.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical

---

[3]Plaintiff does not appear to challenge that does not meet or equal the Listings at § 12.02. This Listing requires, in pertinent part:
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
> \*\*\*\*\*
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;
>
> AND
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.

criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

> The Listings at § 12.05C requires that the claimant show evidence of:
>
> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The additional impairment under § 12.05C need not of itself be disabling, since that would make the requirement meaningless. Branham v. Hecker, 775 F.2d 1271, 1273 (4th Cir. 1985). Section 12.05 further provides:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Fourth Circuit has held that § 12.00 "expressly define[s] mental retardation as 'a lifelong condition.'" Branham v. Heckler, 775 F.2d at 1274.

It is unclear from the ALJ's decision if he properly considered whether Plaintiff met or equaled the Listings at § 12.05. In the section of his decision pertaining to the Listings, the ALJ stated that Plaintiff had no impairment that met any of the listed impairments and that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." Tr. 12. As noted above, however, psychologist Dr. Bradley opined that Plaintiff met the Listings at § 12.04 and § 12.05. Later in his decision, the ALJ discusses Dr. Bradley's December

11

2007 and November 2009 evaluations, Dr. Bradley's medical source statement, and Dr. Bradley's Psychiatric Review Technique. There is, however, no mention of Dr. Bradley's opinion concerning the Listings. See Tr. 16-17.[4] The ALJ then specifically states that he considered medical evidence concerning Plaintiff's organic mental disorder and affective disorder under § 12.02 and § 12.04. However, he did not discuss § 12.05. See Tr. 21.

The Commissioner does not appear to dispute that Plaintiff submitted evidence of valid IQ scores in the required range or that Plaintiff had an additional physical or mental impairment imposing additional and significant work-related limitation of function. The question thus appears to be whether Plaintiff can establish that he had deficits in adaptive behavior initially manifested during the developmental period. Plaintiff argues that he has done so based on his educational record which indicates he dropped out of school after eighth grade and had poor grades, testing indicating his limited ability to write and perform computations, and his IQ tests which create a rebuttable presumption of a fairly constant IQ score throughout life. The Commissioner appears to argue that Plaintiff fails to show deficits in adaptive functioning because he had higher IQ scores while in school and the ALJ found that Plaintiff had a loss of previous functional abilities. Plaintiff appears to argue that the earlier IQ scores were based on different tests than the November 2009 testing

---

[4]Thus, it is also unclear whether the ALJ fully considered Dr. Bradley's opinion. The ALJ does not specify the weight given to Dr. Bradley's opinion, although he appears to have given it little weight and relied on the opinion of the non-treating, non-examining State agency psychologist (Dr. Goots). Dr. Goots' opinion was rendered in December 2007, such that it did not consider the November 2009 IQ testing or Dr. Bradley's November 2009 opinion. Although Dr. Bradley was not a treating psychologist, the regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(d) and 416.927(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1527(d)(2)(I) and 416.927(d)(2)(I).

12

which could account for the differences, that there is no evidence in the medical record that his IQ scores were reduced by the motorcycle accident, and that his own testimony was only that his eyes (rather than mental function) got worse after the accident. Plaintiff presented medical evidence that he may have met § 12.05. It is recommended that this action be remanded to the Commissioner to consider whether Plaintiff met the Listings at § 12.05 in light of all of the evidence including Dr. Bradley's opinions.

    B.    RFC

Plaintiff alleges that the ALJ erred in determining that he had the physical RFC for medium work. He claims that the ALJ erred in finding that he was only minimally limited by his back condition. In particular, Plaintiff argues that the ALJ should have found him more limited based on medical evidence showing that he had stenosis, a compromised gait, and significantly limited range of motion in his back; MRI evidence of degenerative changes at L4-5 and L5-1; positive straight-leg raise testing; and need for a lumbar medial branch block due to back pain. Plaintiff claims that his shoulder impairment was more limiting than found by the ALJ based on his report to Dr. Englee that he could not lift thirty pounds with his left arm; Dr. Chutkan's notation that he had rotator cuff give way and very positive signs of impingement with some guarding with attempted range of motion of his shoulder; Dr. Martell's report that his forward flexion was only ninety degrees and abduction was only ninety degrees; and his inability to put his left hand behind his back and pain with passive range of motion. Plaintiff argues that the evidence does not support that he could reach with his left arm constantly throughout the day or even frequently, or that he could lift fifty pounds up to a few hours a day and twenty-five pounds frequently throughout the day with his left upper extremity. The Commissioner contends that the ALJ properly determined Plaintiff's RFC.

Specifically, the Commissioner argues that the RFC finding is supported by evidence that generally showed Plaintiff had a normal gait and no neurological abnormalities, the examination findings of Dr. Sweatt and Dr. Englee, and by Plaintiff's testimony. The Commissioner contends that although Plaintiff cites to occasionally more favorable findings, these findings are not consistent or representative of the record as a whole.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

The RFC found by the ALJ is not supported by substantial evidence for the entire period in question. The ALJ indicated that Plaintiff could perform medium work based on Plaintiff having no neurological deficits, no signs of lower extremity instability, no evidence of lumbar stenosis. Plaintiff's January 2009 MRI, however, showed "mild-moderate central canal stenosis." Tr. 557. Additionally, Dr. Englee reported in October 2007 that Plaintiff had a numbing sensation in both his legs and he had burning in his lower back. Tr. 498. Positive straight-leg raise testing was reported in March 2009. Tr. 573.[5] This action should be remanded to the ALJ to consider Plaintiff's RFC in light of all of the evidence.

---

[5] Although it is possible that the RFC found by the ALJ may be supported for the period prior to Plaintiff's date last insured for purposes of DIB benefits (March 31, 2007), Plaintiff also applied for SSI.

14

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine whether Plaintiff met or equaled the Listing at § 12.05, consider the opinion of consultative psychologist Dr. Bradley, and determine Plaintiff's RFC in light of all of the evidence.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

November 1, 2012
Columbia, South Carolina